UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NATIONAL INDEMNITY COMPANY,                    )
                                               )
                    Petitioner,                )    **07 CV 10349**
                                               )    Civil Action No.
        - against -                            )
                                               )    **PETITION TO CONFIRM**
SEATON INSURANCE COMPANY,                      )    **ARBITRAL AWARD**
                                               )
                    Respondent.                )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    National Indemnity Company ("NICO"), by and through its attorneys, Dewey & LeBoeuf

LLP and Clyde & Co. US LLP, allege as follows:

RECEIVED
NOV 1 5 2007
U.S.D.C. S.D.N.Y.
CASHIERS

## NATURE OF THE PROCEEDING

    1.      This is a petition pursuant to 9 U.S.C. § 9, to confirm the final award (the "Final

Award") issued by the Panel on September 28, 2007, in an arbitration captioned *National

Indemnity Company v. Seaton Insurance Company*.  A true and correct copy of the Panel's Final

Award is annexed hereto as Exhibit A.

    2.      This action arises under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, as the

agreement at issue (i) is a contract evidencing a transaction involving commerce between NICO,

a Nebraska entity, and Seaton Insurance Company ("Seaton"), a Rhode Island entity, and (ii)

calls for arbitration in New York.

## PARTIES, JURISDICTION AND VENUE

    3.      Seaton is a Rhode Island company, with its principal place of business at 200

Metro Center Blvd., Warwick, Rhode Island 02886.

4.      NICO is a Nebraska company, with its principal place of business at 3024 Harney Street, Omaha, Nebraska 68131.

5.      This Court has jurisdiction over this action pursuant to 9 U.S.C § 9 and 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

6.      Venue is proper in this District under 9 U.S.C. § 9 and 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

7.      NICO and Seaton entered into an Aggregate Retrocession of Loss Portfolio Agreement (the "Reinsurance Agreement"), whereby NICO agreed to reinsure Seaton for up to $350,000,000 in aggregate losses.  A true and correct copy of the Reinsurance Agreement is annexed hereto as Exhibit B.

8.      The Reinsurance Agreement contains an arbitration clause that provides:

> All matters in difference between [Seaton] and [NICO] in relation to this Retrocession, including its formation and validity, and whether arising during or after the period of this Retrocession, shall be referred to an Arbitration Tribunal in the manner hereinafter set out. . . . Unless the parties agree upon a single arbitrator within thirty days of one receiving a written request from the other for arbitration, the Claimant (the party requesting Arbitration) shall appoint his arbitrator and give written notice thereof to the Respondent (the other party to this Retrocession). The Respondent shall appoint his arbitrator and give written notice thereof to the Claimant.  The two arbitrators shall agree upon the selection of an Umpire. . . . The seat of the Arbitration shall be in New York, New York, and the Arbitration Tribunal shall apply the laws of New York (without regard to conflict of laws principles) as the proper law of this Retrocession.  The arbitration shall be conducted in the English language.  This Retrocession shall be governed by the laws of the State of New York, without regard to

> conflict of laws principles. The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature. The award of the Arbitration Tribunal (by simple majority) shall be in writing and final and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to any court having jurisdiction thereof or having jurisdiction over the parties or their assets.

Ex. B at Article 14.

9.      The governing arbitration clause provides that any award by a majority of the Panel shall be final and binding upon the parties. *Id.*

10.      By Demand dated January 4, 2006, NICO initiated arbitration against Seaton seeking access to books and records. NICO submitted an amended and supplemental Demand on May 22, 2006, adding claims against third-party Castlewood and additional claims against Seaton relating to the handling and servicing of claims under the Reinsurance Agreement. On June 22, 2006, Seaton filed a Counter-Demand for arbitration, seeking, amongst other things, to be declared claims servicer under the Reinsurance Agreement. At the arbitration hearing, Seaton additionally sought rescission of the Reinsurance Agreement.

11.      Hearings were held in New York on July 9-20 and August 6-9, 2007, in which both parties submitted argument, witness testimony and exhibits to the Panel concerning the issues in dispute.

12.      The Panel issued the Final Award on September 28, 2007. The Final Award denied each of Seaton's claims for monetary damages, denied Seaton's claim for rescission of the Reinsurance Agreement and requests to be declared claims servicer under the Reinsurance Agreement, and declared that NICO is entitled to be claims servicer under the Reinsurance Agreement and to be paid for that work.

13.    NICO is entitled to confirmation of each of the Panel's rulings that constitute the Final Award and entry of judgment under 9 U.S.C. § 9.

14.    No grounds exist under 9 U.S.C. § 10 for refusing to recognize and confirm the Final Award.

WHEREFORE, in accordance with the terms of the Final Award and 9 U.S.C. § 9, NICO requests that this Court (1) enter judgment in favor of NICO and against Seaton upon the terms contained in the Final Award; and (2) such other and further relief as the Court may deem just and proper.

Dated:  November 15, 2007
        New York, New York

Respectfully submitted,

DEWEY & LEBOEUF LLP
John M. Nonna
Stephanie A. Wilkins
125 West 55th Street
New York, NY 10019
Phone:  (212) 424-8000
Fax:  (212) 424-8500

CLYDE & CO US LLP
Michael A. Knoerzer
The Chrysler Building
405 Lexington Avenue
11th Floor
New York, New York 10174
Phone:  (212) 710-3900
Fax:  (212) 710-3950

*Attorneys for Petitioner National Indemnity Company*

4

# EXHIBIT A

National Indemnity Company

      Vs.


Seaton Insurance Company

## FINAL AWARD

The Panel, having read the several briefs together with exhibits, after a hearing, and deliberations, a majority now rules as follows:

1. Seaton's demands for rescission of the treaties and return of the premium and investment income less net losses paid, Seaton's demand that NICO reimburse Seaton for ultimate net loss under the treaties without regard to the treaty aggregate limit, Seaton's demand for compensatory damages, Seaton's demand that NICO be compelled to deposit funds into a claims account administered by Seaton, and Seaton's demand that NICO consent to settlements within two days and that the panel remain constituted, are denied.

2. NICO's request that it continue as claims servicer is granted, and NICO is to be paid fees for this service according to the treaties.

3. Seaton's request that it be appointed as claims servicer is denied.

4. NICO's request that it be authorized to collect reinsurance from Seaton's reinsurers is granted.

5. Seaton's and NICO's demands as to legal fees and expenses in this arbitration are denied.

6. All other claims and demands for relief by either party are denied.

Dated: September 28, 2007

                    For the majority,

                    N. David Thompson, Umpire

Dissenting (except as to item 5),


Caleb Fowler, Arbitrator

# EXHIBIT B

11/20/98   14:48   ☎203                                                    ☒014

UNIGARD SECURITY INSURANCE COMPANY

of Seattle, Washington

AGGREGATE RETROCESSION OF LOSS PORTFOLIO AGREEMENT

NO. RA 1321

EX. 4

UNIGARD SECURITY INSURANCE COMPANY

of Seattle, Washington

AGGREGATE RETROCESSION OF LOSS PORTFOLIO AGREEMENT

NO. RR 1321

EXHIBIT A

08/27/2000 11:22 FAX          DEBEVOISE & PLIMPTON                    @003/020

This Aggregate Retrocession Loss Portfolio Agreement ("Retrocession") is made between UNIGARD SECURITY INSURANCE COMPANY, Seattle, Washington (the "Reinsured") and National Indemnity Company, Omaha, Nebraska (the "Reinsurer").

ARTICLE 1.  EFFECTIVE DATE AND TERMS OF AGREEMENT

The Retrocession shall incept on the Effective Date. This Retrocession shall expire at the earlier of: (i) the payment by Reinsurer of the aggregate limit of liability provided for in Article 2 of this Retrocession ("The Aggregate Limit"); or (ii) the extinguishment of all liabilities under all Insurance Policies/Reinsurance Contracts.  The Retrocession shall be subject to receipt of all necessary approvals from state insurance regulatory authorities.

ARTICLE 2.  AGGREGATE LIMIT

Reinsurer hereby agrees to reimburse the Reinsured for Ultimate Net Loss paid by the Reinsured up to U.S. $327,000,000 (Three Hundred Twenty-Seven Million United States Dollars).  UNDER NO CIRCUMSTANCES WILL THE REINSURER BE LIABLE FOR MORE THAN U.S. $327,000,000 (THREE HUNDRED TWENTY-SEVEN MILLION UNITED STATES DOLLARS) IN THE AGGREGATE BY REASON OF ENTERING INTO THIS RETROCESSION.

The Reinsured and Reinsurer confirm that it is their mutual intent that the Reinsurer's liabilities under this Retrocession follow from and are identical to any and all liabilities of the Reinsured for Ultimate Net Loss under the Insurance Policies/Reinsurance Contracts, subject to the terms, conditions, exclusions and Aggregate Limit of this Retrocession.

ARTICLE 3.  EXCLUSIONS

A.  This Retrocession shall not cover any liability under any Insurance Policy/Reinsurance Contract paid by Reinsured before the Effective Date as determined by the books and records of Reinsured or which should have been booked as paid prior to the Effective Date.

B.  This Retrocession shall not cover any liability (a) in respect of the fraud of a director, officer or employee of the Reinsured and/or Claims Servicer acting individually or collectively or acting in collusion with another individual or corporation or any other organization or party involved in the presentation, defense or settlement of any claim; or (b) in respect of any tortious act of the Reinsured and/or Claims Servicer in bad faith in connection with any insurance policies or reinsurance contracts, not reinsured hereunder.

C.  This Retrocession shall not cover any Unallocated Loss Adjustment Expense.

D.  This Retrocession shall not cover any policyholder dividends or return premiums except to the extent Reinsured receives a full and final release from the Insured in consideration of such return premium.

E.  This Retrocession shall not cover any tax, whether the tax is denominated as an income tax, excise tax, premium tax, surplus lines tax or any other tax assessment.

F.  This Retrocession shall not cover any liability of Reinsured under insurance or reinsurance contracts, policies or binders included in the FASR Book which relate to an occurrence on or after January 1, 1978 or, for claims made coverage, a claim made on or after January 1, 1978.  With respect to the FASR Book, this Retrocession excludes any

2 of 12

G. liability of the Reinsured under insurance or reinsurance contracts issued after January 1, 1977.

G. This Retrocession shall not cover any liability of Reinsured under insurance or reinsurance contracts, policies or binders included in the RA Book which relate to an occurrence on or after January 1, 1987 or, for claims made coverage, a claim made on or after January 1, 1987. With respect to the RA Book, this Retrocession excludes any liability of the Reinsured under insurance or reinsurance contracts issued after January 1, 1987.

H. This Retrocession shall not cover any liability excluded in the Insurance Policies/Reinsurance Contracts or as otherwise agreed between the Reinsured and Reinsurer.

## ARTICLE 4. DEFINITIONS

A. Wherever used in this Retrocession, the term "Insurance Policy/ Reinsurance Contract" shall mean any and all binders, insurance policies, contracts of insurance or reinsurance and renewals or modifications thereof and all endorsements or riders thereto for which Reinsured insured or reinsured any portion of the risk if such insurance or reinsurance was included in the FASR Book prior to or on December 31, 1977, or in the RA Book prior to or on December 31, 1986. The Reinsured shall be the sole judge as to what constitutes a claim or loss covered by the Insurance Policies/Reinsurance Contracts reinsured under this Retrocession and as to the Reinsured's liability thereunder and as to the amount or amounts which it shall be proper for the Reinsured to pay thereunder, and the Reinsurer shall be bound by the reasonable, good faith judgement of the Reinsured as to the liability and obligation of the Reinsured under the Insurance Policies/Reinsurance Contracts reinsured under this Retrocession, subject to the terms, exclusions and conditions hereof. Furthermore, the Reinsured shall be the sole judge as to whether a binder, policy of insurance, contract of insurance, renewals or modifications thereof, or endorsements or riders thereto are included within the FASR Book or the RA Book (subject to the terms, exclusions and conditions hereof), and the Reinsurer shall be bound by the reasonable, good faith judgement of the Reinsured in this regard.

B. Wherever used in this Retrocession, the term "FASR Book" shall mean any and all binders, policies of insurance and contracts of reinsurance and renewals and modifications thereof and all endorsements or riders thereto for which the Reinsured insures or reinsures any portion of the risk written and which are included within the Facultative and Special Risks ("Allen Miller") Book.

C. Wherever used in this Retrocession, the term "RA Book" shall mean any and all binders, contracts of reinsurance and renewals and modifications thereof and all endorsements or riders thereto for which the Reinsured reinsures any portion of the risk written and which are included in the Reinsurance Assumed Book.

D. Wherever used in this Retrocession, the term "Ultimate Net Loss" shall mean that sum which has in fact been paid by the Reinsured on or after the Effective Date, in settlement or satisfaction of Underlying Claims after making deductions for all salvage, subrogation, reinsurance collected and any other applicable funds held, trust funds, claims against insolvent estates, letters of credit or other applicable security as and when such deductions are converted to cash by the Reinsured. Ultimate Net Loss shall include any liabilities of the Reinsured for any tortious acts or any action of the Reinsured in bad faith, except as set forth in Article 3(B). Ultimate Net Loss shall include Allocated Loss Adjustment Expense; and all such costs

incurred in connection with coverage disputes including justifiable litigation and arbitration costs. Ultimate Net Loss shall not include Unallocated Loss Adjustment Expense.

E.  Wherever used in this Retrocession, the term "Allocated Loss Adjustment Expenses" shall mean all court, arbitration, mediation or other dispute resolution costs, attorneys' fees, expenses, costs (including but not limited to the costs of supersedeas and appeal bonds) and pre- and post-judgment interest (excluding any overhead, internal costs, staff costs and similar expenses of the Reinsured or the Claims Servicer and excluding any fees of the Claims Servicer) incurred in connection with the defense, investigation, litigation, appeal, appraisal, adjustment, settlement or audit of or negotiations in relation to any claim or loss covered by the Insurance Policies/Reinsurance Contracts reinsured under this Retrocession. Any loss adjustment expenses which are not Allocated Loss Adjustment Expenses shall be "Unallocated Loss Adjustment Expenses".

F.  Wherever used in this Retrocession, the term "Underlying Claims" shall mean all the liabilities and obligations of Reinsured (including but not limited to punitive and exemplary damages to the extent covered hereunder) arising under any Insurance Policy/Reinsurance Contract.

G.  Whenever used in this Retrocession, the term "Insured" shall mean an insured or cedent under an Insurance Policy/Reinsurance Contract.

H.  Whenever used in this Retrocession, the term "Claims Servicer" shall mean Eastgate Group Limited, or any wholly-owned affiliate or subsidiary thereof, or such other person as Reinsurer approves in writing to manage Underlying Claims on behalf of Reinsured.

I.  Whenever used in this Retrocession, "Effective Date" shall mean 12:01 a.m. Eastern Standard Time on the later of the 1) day of the closing of the acquisition of Reinsured by Dukas Place Holdings, L.P., and 2) the day Reinsurer receives the premium due under Article 6.

## ARTICLE 5.   SALVAGES AND SUBROGATION AND OTHER RECOVERIES

For so long as this Retrocession is in effect and thereafter as provided herein, the Reinsurer shall be subrogated to all of the rights of the Reinsured against any person or entity liable to the Reinsured or Insured in respect of the Ultimate Net Loss and Reinsurer shall be entitled to any salvage or subrogation to which Reinsured would be entitled under the Insurance Policies/ Reinsurance Contracts.  The whole of any receipts of Reinsurer under this Article shall be credited for the sole benefit of the Reinsurer, net of justifiable external expenses of collection. Reinsured shall timely file and pursue to collection, to the extent possible, all claims against financially impaired or insolvent reinsurers, and shall aggressively take all steps reasonably necessary to collect from solvent reinsurers.  Reinsured shall promptly draw down all letters of credit, withdraw funds from trusts or charge collections against funds held to collect promptly amounts due Reinsured.

## ARTICLE 6.   PREMIUM

As the consideration for the rights and obligations set forth in this Retrocession, Reinsurer agrees to accept and the Reinsured agrees to pay a premium of U.S. $191,000,000 (One Hundred Ninety-One Million United States Dollars).  Payment shall be made in immediately available U.S. funds by wire transfer to:

Norwest Bank Nebraska, N.A.
Omaha, Nebraska
ABA #104000058

Account No. 1150-001-492

It is understood and agreed that the premium stated in this Retrocession is net to the Reinsurer of any taxes, expenses, brokerages or other charges (with the exception of Reinsurer's income taxes) in connection with this Retrocession as such charges are the responsibility of the Reinsured. The premium is non-refundable.

ARTICLE 7. CURRENCY

For the purpose of measuring erosion of the Aggregate Limit, payments by Reinsurer hereunder in currencies other than U.S. dollars shall be converted into U.S. dollars at the rate of exchange used in Reinsurer's books on the date the reinsurance payment is made by the Reinsurer.

ARTICLE 8. ERRORS AND OMISSIONS/NON-WAIVER

Any inadvertent error or omission on the part of the Reinsured or the Reinsurer shall not relieve the other party hereto from any liability which would have attached hereunder, provided that such error or omission is rectified as soon as possible after discovery. Payment by the Reinsurer does not constitute a waiver of any rights or remedies it may have under this Retrocession to rectify any incorrect payment or any payment which is found not to be due. Reports submitted by one party hereto to the others in the course of the Retrocession do not constitute a waiver of any rights or remedies that the party has under this Retrocession to rectify any incorrect reports. Nevertheless, nothing contained in this Article shall be held to override the terms and conditions of this Retrocession, and no liability shall be imposed on either party hereto greater than would have attached had such error or omission not occurred.

The terms of this Retrocession shall not be waived, modified or changed except by written amendment executed by a duly authorized officer of the Reinsured and the Reinsurer. This Retrocession may not be assigned by Reinsured or the Reinsurer without the prior written consent of the other party hereto.

ARTICLE 9. ACCESS TO RECORDS

The Reinsured (including the Claims Servicer) shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Reinsured and Claims Servicer relating to this Retrocession. The Reinsured and Claims Servicer shall also make available for inspection and place at the disposal of the Reinsurer at all reasonable times, all records to which the Reinsured or Claims Servicer may have access, by terms of any reinsurance agreement, insurance policy or otherwise. The Reinsurer shall have the right to examine and copy at any reasonable time all papers, books, accounts, documents, and other records of the Reinsured and Claims Servicer and records to which the Reinsured may have access, relating to the business covered by this Retrocession. It is agreed that Reinsurer's right of access to records shall continue as long as either party hereto has a claim against the other arising out of this Retrocession. The Reinsured's contract with the Claims Servicer shall secure to Reinsurer the inspection rights provided in this Article.

ARTICLE 10. WARRANTIES

Reinsured warrants and represents that it will not voluntarily undertake any material change in corporate structure, administrative practices in respect of the Insurance Policies/Reinsured Contracts which are reinsured under this Retrocession or its domicile, without prior written consent of the Reinsurer which consent will not be unreasonably withheld or delayed.

Reinsured warrants and represents that it will not buy any additional reinsurance protection in respect of any Insurance Policy/Reinsurance Contract either above or below this Retrocession without prior written consent of the Reinsurer which will not be unreasonably withheld or delayed.

## ARTICLE 11. CONDITIONS

A.   Reinsurer shall have the right to associate in the adjustment of all Underlying Claims.

B.   In addition to the Reinsurer's general right to associate as set forth in A. above, the Reinsurer's approval shall be obtained by the Reinsured prior to committing to the payment and/or settlement of (1) any gross claim settlements or other payments covered by this Retrocession in excess of U.S. $250,000; (2) any payments not in settlement of specific claims, including insurance policy buy-backs, return premiums or commutations of assumed reinsurance obligations, in excess of U.S. $250,000; and (3) any commutations or assignments of ceded reinsurance regardless of value. With respect to items (1) and (2) herein, Reinsurer's approval shall not be unreasonably withheld or delayed.

C.   No person may serve as Claims Servicer or otherwise manage the Underlying Claims other than Eastgate Group Limited, or any wholly-owned affiliate or subsidiary thereof, without the prior written consent of Reinsurer. In the event that, prior to the fifth anniversary of the Effective Date, Dukes Place Holdings L.P. sells 50% or more of the Voting Securities (defined below) of Reinsured to any other person or persons, then Eastgate Group Limited, or any wholly-owned affiliate or subsidiary thereof, shall continue to serve as Claims Servicer or otherwise manage the Underlying Claims with the prior consent of Reinsurer (which consent shall not be unreasonably withheld or delayed), provided that (1) Dukes Place Holdings L.P. is the single largest owner of the Voting Securities of Reinsured and owns 20% (twenty percent) or more of the Voting Securities of Reinsured; (2) the agreement under which Eastgate Group Limited, or any wholly-owned affiliate or subsidiary thereof, acts as Claims Servicer for Reinsured does not change in any manner that affects the interest of Reinsurer under this Retrocession; (3) Eastgate Group Limited, or any wholly-owned affiliate or subsidiary thereof, in its capacity as Claims Servicer shall have complied with the terms of this Retrocession and shall continue to comply with such terms; and (4) the performance of Eastgate Group Limited, or any wholly-owned affiliate or subsidiary thereof, as Claims Servicer has been reasonably satisfactory to Reinsurer, in all material respects, since the Effective Date. If Reinsurer's consent is not so given, then Reinsurer shall have the right to become the Claims Servicer until this Retrocession is exhausted under the same terms and conditions as Eastgate Group Limited, or any wholly-owned affiliate or subsidiary thereof, served as Claims Servicer. In the event Reinsurer's consent is so given, the four conditions set forth in this paragraph are continuing conditions precedent to Eastgate Group Limited, or any wholly-owned affiliate or subsidiary thereof, maintaining its position as Claims Servicer. Moreover, in the event Reinsurer's consent is so given, Reinsurer shall still have the right to become the Claims Servicer in the event Dukes Place Holdings L.P. and/or Eastgate Group Limited, or any wholly-owned affiliate or subsidiary thereof, as the case may be, fails to maintain or perform the obligations set forth in this Retrocession in a manner reasonably acceptable to Reinsurer.

In the event that, on or after the fifth anniversary of the Effective Date, Dukes Place Holdings L.P. sells 50% or more of the Voting Securities of Reinsured to any other person or persons, then Reinsurer shall have the right to become the Claims Servicer until this

6 of 12

Retrocession is exhausted under the same terms and conditions as Eastgate Group Limited, or any wholly-owned affiliate or subsidiary thereof, served as Claims Servicer.

In the event Reinsurer becomes the Claims Servicer, Reinsured shall reimburse Reinsurer for all Unallocated Loss Adjustment Expense it incurs as Claims Servicer.

For purposes of this Article 11, the term "Voting Security" means any security or other instrument which has the power to vote at a meeting of shareholders of a person for or against the election of directors or any other matter involving the direction of the management and policies of such person. In the event Reinsured issues any "super voting" security or instrument, or any other security or instrument in which the voting rights do not equal the ownership rights, Reinsurer shall have the right to become the Claims Servicer. For purposes of this Article 11, "sells" shall be read broadly to include any exchange, including a swap or like transaction, which transfers control and/or financial interest in the Voting Securities of the Reinsured.

## ARTICLE 12. OFFSET

The Reinsured or the Reinsurer may each offset any balance(s) which may become due to the other party against other liabilities due from that other party. This offset right shall apply regardless of whether the balances arose on account of premium, commission, claims, losses, Allocated Loss Adjustment Expense, salvage or any other amount(s) due from one party to the other under this Retrocession or under any other agreement heretofore or hereafter entered into between the Reinsured and the Reinsurer. This right of offset shall apply regardless of whether either party was acting as assuming reinsurer or ceding reinsured or was acting in any other capacity related or not related to reinsurance.

## ARTICLE 13. INSOLVENCY OF THE REINSURED

In the event of insolvency of the Reinsured, the reinsurance provided by this Retrocession shall be payable by the Reinsurer on the basis of the liability of the Reinsured as respects the Insurance Policies/Reinsured Contracts reinsured hereunder, without diminution because of the insolvency, directly to the Reinsured or its conservator, liquidator, receiver, or statutory successor. Reinsurer's liabilities hereunder shall not be accelerated or otherwise altered in timing or amount by reason of Reinsured's liquidation or insolvency. In the event of the liquidation or insolvency of the Reinsured, Reinsurer's liability under this Retrocession shall be to make payments to or on behalf of Reinsured as and when due under the terms of the Insurance Policies/ Reinsurance Contracts. It is agreed, that the Liquidator, receiver, conservator, or statutory successor of the Reinsured shall give written notice to the Reinsurer of the pendency of a claim against the Reinsured indicating the Insured, which claim would involve a possible liability on the part of the Reinsurer within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses that they may deem available to the Reinsured or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Reinsured as part of the expense of liquidation to the extent of a pro rata share of the benefit which may accrue to the Reinsured solely as a result of the defense undertaken by the Reinsurer.

## ARTICLE 14. ARBITRATION

All matters in difference between the Reinsured and the Reinsurer in relation to this Retrocession, including its formation and validity, and whether arising during or after the period of this Retrocession, shall be referred to an Arbitration Tribunal in the manner hereinafter set out. If a trustee, receiver, rehabilitator, liquidator or conservator (including any insurance regulatory agency or authority acting in such a capacity) is appointed for either Reinsured or Reinsurer, the parties shall continue to be obligated to resolve any claim, dispute or cause of action subject to this Article 14 by arbitration.

Unless the parties agree upon a single arbitrator within thirty days of one receiving a written request from the other for arbitration, the Claimant (the party requesting Arbitration) shall appoint his arbitrator and give written notice thereof to the Respondent (the other party to this Retrocession). The Respondent shall appoint his arbitrator and give written notice thereof to the Claimant. The two arbitrators shall agree upon the selection of an Umpire.

If the two arbitrators are unable to agree upon an umpire, each party shall select three nominees for umpire within thirty days after receipt of a joint notice from the arbitrators that they are unable to agree upon an umpire. Each party shall have the right to strike two of the umpire nominees selected by the other party within thirty days of receipt of the nominations. The umpire shall be selected between the remaining nominee of each party by lot.

The Claimant shall submit its initial brief within 20 days from appointment of the Umpire. The respondent shall submit its brief within 20 days after receipt of the Claimant's brief and the Claimant shall submit a reply brief within 10 days after receipt of the respondent's brief. The Arbitration Tribunal shall make its decision solely as to the issue presented in the notice of arbitration within 60 days following the termination of the hearings. All deadlines set forth in this paragraph may be extended by the Arbitration Tribunal in any manner that it may deem just and proper upon the application of either party.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons who are disinterested, active or retired senior executives of insurance or reinsurance companies.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Each party shall bear the costs of its own arbitrator and shall share equally in the costs of the Umpire. All other costs of the arbitration shall be paid as directed by the Arbitration Tribunal, who shall direct to and by whom and in what manner they shall be paid.

The seat of the Arbitration shall be in New York, New York, and the Arbitration Tribunal shall apply the laws of New York (without regard to conflict of laws principles) as the proper law of this Retrocession. The arbitration shall be conducted in the English language. This Retrocession shall be governed by the laws of the State of New York, without regard to conflict of laws principles.

The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.

The award of the Arbitration Tribunal (by simple majority) shall be in writing and final and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other

may apply for its enforcement to any court having jurisdiction thereof or having jurisdiction over the parties or their assets.

ARTICLE 15.  NO REINSTATEMENTS

The Reinsured shall have no right to reinstate coverage under this Retrocession upon exhaustion of the Aggregate Limit or for any other reason.

ARTICLE 16.  NO RIGHTS OF THIRD PARTIES

Nothing in this Retrocession, express or implied, is intended, or shall be construed to confer upon or give to any person, firm or corporation, (other than the parties hereto and their permitted assigns or successors) any rights or remedies under or by reason of this Retrocession.

ARTICLE 17.  NOTICES

All notices to another party hereto shall be in writing and sent by telecopier, or by certified mail, return receipt requested, and addressed to the party to whom addressed, as follows:

        National Indemnity Company
        3024 Harney Street
        Omaha, Nebraska  68131
        Attn: General Counsel
        Telecopy:  (402) 536-3265

        Unigard Security Insurance Company
        c/o Eastgate, Inc.
        44 Wall Street
        New York, NY  10005
        Attention: Mr. David Wallis
        Chief Executive Officer
        Telecopy:  (212) 425-6566

Either party hereto may change the foregoing address or facsimile number on thirty (30) days notice to the other parties.  Notice shall be deemed effective:

1.  if communicated by telecopier at the time of transmission, and, for the purpose of proving such transmission it shall be sufficient to prove that the facsimile transmission was made to the number notified by the party in question for this purpose and that a transmission report was received from the machine from which the facsimile was sent which indicates that the facsimile was sent in its entirety to the facsimile number of the recipient.

2.  if sent by certified mail at the expiration of ninety-six (96) hours after the envelope containing the same was delivered into the custody of the United States postal authorities, and shall be effective notwithstanding that it may be misdelivered or returned undelivered.

Article 18.  STANDARD OF CARE

In undertaking the obligations and responsibilities described herein, the Reinsured and Claims Servicer will have a fiduciary duty to act in utmost good faith to the interests of Reinsurer.

## ARTICLE 19.  ENTIRE AGREEMENT

The parties hereto agree that this Retrocession is not cancelable or voidable. This Retrocession is the entire agreement between the Reinsured and the Reinsurer and shall not be subject to, or modified by, any prior representations or agreements, written or oral, except as otherwise expressly indicated herein.

## ARTICLE 20.  REPORTS AND REMITTANCES

A.  <u>Reports</u>.  The Reinsured shall provide the Reinsurer with summary reports of quarterly and cumulative claims activity subject to this Retrocession within 45 days of the close of each calendar quarter (the "Quarterly Reports"). The Reinsured shall further provide Reinsurer a monthly cash report identifying all receipts and disbursements subject to this Retrocession and estimating receipts and disbursements for the following month. The Reinsured shall also provide such other documentation as the Reinsurer may reasonably request to assess its exposure under this Retrocession.

B.  <u>Annual Statement</u>. As promptly as possible following the end of each calendar year, the Reinsurer and Reinsured shall furnish each other with a copy of their (1) most recent annual statement filed with their domiciliary state insurance regulator; and (2) financial statements (statutory basis) as audited by certified public accountants and filed with its domiciliary state insurance regulator.

C.  <u>Claims Account</u>. The Reinsurer shall establish and maintain an account for use by the Reinsured for the payment of claims hereunder (the "Claims Account"). The amount of funds to be maintained in the Claims Account shall be agreed between the Reinsured and the Reinsurer as may be necessary from time to time, in an amount sufficient to fund the payment of claims as they fall due from time to time, subject to the terms, conditions and aggregate limit of this Retrocession. In addition, the Reinsured shall have the right to make reasonable requests of immediate additional funding from the Reinsurer to such Claims Account from time to time and the Reinsurer shall immediately honor, subject to Article 11 herein, such a request for immediate additional funding provided that the liability for claims paid are otherwise covered and immediately due under this Retrocession. Interest on funds in the Claims Account shall be the property of the Reinsurer.

## ARTICLE 21.  RESERVES

For insurance regulatory accounting purposes, (1) the Reinsured shall determine the amount of its reserves on the Underlying Claims and may change those reserves from time to time as it, in its sole discretion, deems necessary or appropriate, and (2) the Reinsurer shall determine the amount of its reserves on its liability hereunder and may change those reserves from time to time as its, in its sole discretion, deems necessary or appropriate.

## ARTICLE 22.  CREDIT FOR REINSURANCE

If at any time (other than pursuant to any change in domicile for which Reinsurer's consent has not been obtained under Article 10) the Reinsured is advised by a state insurance regulatory authority in which it is licensed or is an accredited reinsurer that, during the term of this Retrocession, it will not be able, due to the licensing status or the lack of appropriate accreditation (or other qualification similarly required by an applicable state insurance regulatory authority in the United States of America to assume reinsurance obligations) of the Reinsurer, to take full credit for reinsurance recoverables

hereunder (whether paid or unpaid) in its then current financial statements required by appropriate state insurance regulatory authorities in the United States, and the Reinsured gives the Reinsurer written notice to such effect, the Reinsurer will take all steps necessary to enable the Reinsured to receive full credit for such reinsurance recoverables in such then current financial statements, which may include any one or combination of the following: providing funds withheld, cash advances, a trust agreement, letter of credit, the delivery of collateral acceptable to the appropriate insurance regulatory authorities, amending this Retrocession in form but not in substance or such other action acceptable to Reinsurer and applicable insurance regulatory authorities.  The Reinsurer has sole discretion in which necessary steps to take, and the Reinsured will fully cooperate in implementing the steps so chosen, so long as the steps the Reinsurer chooses and takes enable the Reinsured to receive such full credit.  Interest and all other investment income on any funds posted as security pursuant to Article 22 shall be sole property of Reinsurer.  In the event that the Reinsurer fails to take all such necessary steps, the Reinsured shall post a cash deposit equal to all of its outstanding liabilities under this Retrocession in a trust fund complying with applicable credit-for-reinsurance regulations of the Department of Insurance of New York and California.

ARTICLE 23.  TERRITORY

The Retrocession shall apply to Insurance Policies/Reinsurance Contracts covering risks wherever situated.

ARTICLE 24.  INTERMEDIARY

The parties hereto represent and warrant to each other that no intermediary was involved in the procurement of this Retrocession.

ARTICLE 25.  COUNTERPARTS

This Retrocession may be executed in two counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument.

ARTICLE 26.  HEADINGS

The headings of the Articles and the paragraphs herein are inserted for convenience of reference only, and are not intended to be a part of or to affect the meaning or interpretation of this Retrocession.

Executed at _BOSTIN_ , _MASS_ on this _20th_ day of November, 1998.

UNIGARD SECURITY INSURANCE COMPANY

By _Thomas E Mc6oy_
Title:

and at _____ , _____ on this _____ day of November, 1998.

NATIONAL INDEMNITY COMPANY

By _____
Title:

Acknowledged and Accepted:

Eastgate Group Limited                    Dukes Place Holdings L.P.

By_____                  By_____
Title:                                    Dukes Place Holdings Ltd.
                                          as General Partner of
                                          Dukes Place Holdings L.P.

12 of 12

ARTICLE 26.   HEADINGS

The headings of the Articles and the paragraphs herein are inserted for convenience of reference only, and are not intended to be a part of or to affect the meaning or interpretation of this Retrocession.

Executed at _____, _____ on this _____ day of November, 1998.

UNIGARD SECURITY INSURANCE COMPANY

By _____
Title: _____

and at _____, _____ on this _____ day of November, 1998.

NATIONAL INDEMNITY COMPANY

By _____
Title: _____

Acknowledged and Accepted:

Eastgate Group Limited                    Dukes Place Holdings L.P.

By _____             By _____
Title:                                 Dukes Place Holdings Ltd.
                                       as General Partner of
                                       Dukes Place Holdings L.P.

ARTICLE 15. HEADINGS

The headings of the Articles and the paragraphs herein are inserted for convenience of reference only, and are not intended to be a part of or to affect the meaning or interpretation of this Retrocession.

Executed at _____, _____ on this _____ day of November, 1998.

UNIGARD SECURITY INSURANCE COMPANY

By _____
Title:

and at _____, _____ on this _____ day of November, 1998.

NATIONAL INDEMNITY COMPANY

By _____
Title:

Acknowledged and Accepted:

Eastgate Group Limited                          Dukes Place Holdings L.P.

By _____             By _____
Title:                                          Dukes Place Holdings Ltd.
                                                as General Partner of
                                                Dukes Place Holdings L.P.

ARTICLE 26.   HEADINGS

The headings of the Articles and the paragraphs herein are inserted for
convenience of reference only, and are not intended to be a part of or to
affect the meaning or interpretation of this Retrocession.

Executed at _____. _____ on this __90th__ day of November, 1998.

UNIGARD SECURITY INSURANCE COMPANY

By _____
Title:

and at _____. _____ on this ____ day of November, 1998.

NATIONAL INDEMNITY COMPANY

By _____
Title:

Acknowledged and Accepted:

Eastgate Group Limited                     Dukes Place Holdings L.P.

By _____                    By _____
Title:                                     Dukes Place Holdings Ltd.
                                           as General Partner of
  DIRECTOR                                 Dukes Place Holdings L.P.

12 of 22

Amendment No. 1

Unigard Security Insurance Company
of Seattle, Washington

Aggregate Retrocession of Loss Portfolio Agreement

No. RA 1321

This Agreement is hereby amended as follows:

Article 12

The last sentence of Article 12, which states "This right of offset shall apply regardless of whether either party was acting as assuming reinsurer or ceding reinsured or was acting in any other capacity related or not related to reinsurance" is deleted in its entirety.

Article 13

The second sentence of Article 13, which states "Reinsurer's liabilities hereunder shall not be accelerated or otherwise altered in timing or amount by reason of Reinsured's liquidation or insolvency" is deleted in its entirety. This deletion shall not be construed to create any right to accelerate or otherwise alter the timing or amount of Reinsurer's liabilities.

Article 20

The following is added as the last sentence of Article 20(c): "Reinsurer will settle its liabilities as due no less frequently than quarterly and payments will be made in cash."

Article 21

The following is added as the last sentence of Article 21, "Notwithstanding the foregoing, Reinsurer's reserves shall be no less than Reinsured's reserves on the Underlying Claims."

Article 22

The last sentence of Article 22, which states "In the event that the Reinsurer fails to take all such necessary steps, the Reinsured shall post a cash deposit equal to all of its outstanding liabilities under this Retrocession in a trust fund complying with applicable credit-for-reinsurance regulations of the Department of Insurance of New York and California" is deleted in its entirety.

All other terms and conditions remain unchanged. This Amendment No. 1 shall come into full force and effect on the Effective Date set forth in the Agreement.

Page 1 of 2

05/07/2000 11:27 FAX          DEBEVOISE & PLIMPTON                      018/020

Executed at New York , New York on this 31st day of March, 1999.

UNIGARD SECURITY INSURANCE COMPANY

By _____

Title: _____

and at Stanford , Connecticut on this 29th day of March, 1999.

NATIONAL INDEMNITY COMPANY

By _____

Title: _____

Acknowledged and Accepted:

Eastgate Group Limited                          Dukes Place Holdings L.P.

By _____           By _____

Title: _____          Dukes Place Holdings Ltd.
                                                              as General Partner of
                                                              Dukes Place Holdings L.P.

08/07/2000 11:37 FAX                     DEBEVOISE & PLIMPTON                     ☑015/020

Executed at _____ on this ____ day of March, 1999.

UNIGARD SECURITY INSURANCE COMPANY

By _____

Title: _VICE PRESIDENT_

and at _Stamford_ _Connecticut_ on this _29th_ day of March, 1999.

NATIONAL INDEMNITY COMPANY

By _____

Title: _____

Acknowledged and Accepted:

Eastgate Group Limited

By _____

Title: DIRECTOR

Dukes Place Holdings L.P.

By _____
Dukes Place Holdings Ltd.
as General Partner of
Dukes Place Holdings L.P.

Page 2 of 2

05/07/2000 11:57 FAX          DEBEVOISE & PLIMPTON                    ☒020/020

03 29/99    16:00    ☎003                                                         ₹

Executed at New York, New York on this 31st day of March, 1999.

UNIGARD SECURITY INSURANCE COMPANY

By _____
Title: VICE PRESIDENT

and at Stamford, Connecticut on this 29th day of March, 1999.

NATIONAL INDEMNITY COMPANY

By _____
Title: BRIAN SUTTER
VICE PRESIDENT

Acknowledged and Accepted:

Eastgate Group Limited                          Dukes Place Holdings L.P.

By _____                    By _____
Title: _____                    Dukes Place Holdings Ltd.
                                                as General Partner of
                                                Dukes Place Holdings L.P.

Page 2 of 2